FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS 2018 DEC 13  PM 12: 10

U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 18-30020-MGM |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| HANIBAL TAYEH, | ) | Counts One and Two: Bank Fraud; Aiding and Abetting |
| | ) | (18 U.S.C. §§ 1344 and 2) |
| Defendant | ) | |
| | ) | Counts Three through Twelve: Wire Fraud |
| | ) | (18 U.S.C. § 1343) |
| | ) | |
| | ) | Counts Thirteen through Sixteen: Money Laundering; Aiding and Abetting |
| | ) | (18 U.S.C. §§ 1957 and 2) |
| | ) | |
| | ) | Count Seventeen: False Bankruptcy Declaration |
| | ) | (18 U.S.C. § 152(3)) |
| | ) | |
| | ) | Forfeiture Allegations: |
| | ) | (18 U.S.C. §§ and 982(a)(1) and 982(a)(2)(A)) |

SUPERSEDING INDICTMENT

At all times relevant to this Superseding Indictment:

General Allegations

1.     Bank Rhode Island (hereinafter "Bank RI"), was a financial institution doing business in the District of Massachusetts and elsewhere, whose deposits were insured by the Federal Deposit Insurance Corporation.

2.     Spectrum Analytical, Inc. ("Spectrum") was a Massachusetts corporation. It was owned and controlled by HANIBAL TAYEH ("TAYEH") until it was placed into receivership in April 2015.

1

3.      Hanibal Technology, LLC ("Hanibal Technology") was a limited liability company.  It was owned and controlled by TAYEH until the company was placed into receivership in April 2015.

Scheme to Defraud Bank RI

4.      TAYEH created fake documents to obtain money from Bank RI and to assure Bank RI about the health of Spectrum and Hanibal Technology in order to postpone Bank RI's actions to seek legal recourse for missed loan payments.

5.      TAYEH made false representations to lull Bank RI into thinking that the financial health of Spectrum and Hanibal Technology would improve.

6.      TAYEH falsely promised to Bank RI that he would pay past due debt imminently when he knew that Spectrum and Hanibal Technology did not have the funds to do so.

7.      TAYEH gave false reasons to Bank RI for the inability of Spectrum and Hanibal Technology to make required loan payments.

8.      TAYEH would make false representations to Bank RI about the existence of funds that did not exist.

9.      TAYEH made false representations and created fake documents in order to convince vendors doing business with Spectrum to continue to do so, all in an effort to maintain control of Spectrum and Hanibal Technology.

Specific Acts in Furtherance of Scheme to Defraud

10.     In or about December 2013 to January 2014, TAYEH sought a loan package in excess of $9.1 million from Bank RI for Spectrum and Hanibal Technology as co-borrowers.

2

11.     In or about December 2013 to January 2014, TAYEH created and gave a fake letter of credit to Bank RI, purportedly from Samba Financial Group, which guaranteed an accounts receivable (hereinafter the "foreign receivable") purportedly owed to Hanibal Technology from a Saudi Arabian business (hereinafter the "Saudi Arabian business") with which TAYEH hoped to create an environmental testing laboratory in Saudi Arabia. The venture to fund and build the laboratory will be denoted hereinafter as Saudi Arabia Project 1. The foreign receivable was a key asset and an essential part of the collateral Bank RI relied upon, in agreeing to provide the loan package.

12.     On or about January 15, 2014, Spectrum and Hanibal Technology closed on the loan package.

13.     In or about March 2014, after obtaining the initial loan package, TAYEH sought a temporary increase of the revolving line of credit previously extended by Bank RI to Spectrum and Hanibal Technology.

14.     TAYEH falsely represented to Bank RI that Spectrum and Hanibal Technology needed $900,000 as a retainer to purchase instrumentation essential to Saudi Arabia Project 1. TAYEH represented that the purchase of the instrumentation was one of two remaining conditions for Hanibal Technology to receive a first payment of $8.9 million for work done on Saudi Arabia Project 1. TAYEH falsely represented to Bank RI that he sought an increase to the revolving line of credit in order to pay a retainer to purchase instrumentation for Saudi Arabia Project 1.

15.     TAYEH falsely represented that he would use $500,000 in personal funds to pay the $900,000 retainer.

3

16.     On or about March 31, 2014, based on TAYEH's false representations, Bank RI gave Spectrum and Hanibal Technology a 45-day increase of $400,000 to the revolving line of credit.  TAYEH then used $400,000 in Bank RI funds for purposes other than the purchase of instrumentation for Saudi Arabia Project 1, including to pay promissory notes that were the personal obligations of TAYEH.

17.     On or about July 21, 2014, TAYEH falsely stated to Bank RI representatives that he had received $1.1 million in cash from Saudi Arabia Project 1.

18.     On or about October 1, 2014, TAYEH falsely stated that he had met at a prominent New York City law firm with a representative of the Saudi Arabian company involved in Saudi Arabia Project 1, a member of the law firm, and bank representatives.

19.     On or about October 9, 2014, TAYEH provided Bank RI a fake letter, purportedly from the Internal Revenue Service, to bolster a false excuse for why he was unable to make past due loan payments.

20.     On or about October 16, 2014, TAYEH falsely represented that he had been doing "highly classified" work on behalf of the United States government to bolster a false excuse for why he was unable to make past due loan payments.

21.     On or about March 25, 2015, TAYEH sent to several of Spectrum's creditors a fake letter purportedly from TD Bank falsely stating that TD Bank would be loaning Spectrum a substantial amount of money.

22.     On or about May 6, 2015, TAYEH created three fake letters from a Saudi Arabian lawyer and provided them to a bankruptcy trustee and others.  The fake letters falsely stated, among other things, that TAYEH had been provided with the Samba fake letter of credit by the

Saudi Arabian business, that a representative of the Saudi Arabian business had confessed to creating the Samba fake letter of credit, that the Saudi Arabian business had given the Saudi Arabian lawyer settlement funds to be paid to TAYEH personally, and that the Saudi Arabian lawyer had reported the forgery of the Samba letter of credit by the Saudi Arabian business to the Saudi Arabian police.

23.     On or about July 19, 2015, TAYEH created and provided to the bankruptcy trustee and others a fake letter purportedly from the Saudi Arabian lawyer which stated that the Saudi Arabian lawyer had received settlement funds from the Saudi Arabian business and that the Saudi Arabian lawyer had returned the funds to the Saudi Arabian business.

<u>Scheme to Defraud Individuals</u>

24.     TAYEH obtained loans and investments from individuals to help him pursue Saudi Arabia Project 1 and a landfill in the Eastern Province of Saudi Arabia (hereinafter "Saudi Arabia Project 2").

25.     TAYEH made false representations about other sources of funding or potential funding to induce individuals to give him money for Saudi Arabia Project 1 and Saudi Arabia Project 2 (together, the "Projects").

26.     TAYEH made false representations about the progress made on the Projects.

27.     TAYEH promised to provide equity stakes in the Projects and lucrative contracts to provide services for the Projects to induce individuals to give him money.

28.     TAYEH provided fake documents to assure people who had given money to TAYEH about the viability of Saudi Arabia Project 2.

29.     TAYEH falsely represented his purported affiliation with reputable educational institutions.

### Specific Acts in Furtherance of Scheme to Defraud Individuals

30.     In or about April 2013, TAYEH approached Victim 1, a client of Spectrum, and asked him to provide financing for Saudi Arabia Project 1.

31.     On or about August 23, 2013, TAYEH provided fake letters from Samba Financial Group, including the fake Samba letter of credit, to Victim 1.

32.     On or about September 24, 2013, TAYEH sent a letter to Victim 1 promising to pay Victim 1 for project management services and other services on lucrative terms for Saudi Arabia Project 1.

33.     On or about September 24, 2014, TAYEH provided a fake printout of a Chase bank account to Victim 1, purportedly showing that Saudi Arabia Project 1 had over $3 million in its bank account.

34.     On September 24, 2014, TAYEH, seeking more money from Victim 1, emailed a copy of a fake Bank of America check to show that TAYEH had contributed money to Saudi Arabia Project 1.

35.     On September 24, 2014, TAYEH provided Victim 1 a fake letter purportedly from a prominent New York City law firm stating that the firm was providing legal services for Saudi Arabia Project 1.

36.     On or about September 7, 2015, TAYEH formed a new company, Geo-Spectrohumanity, LLC, to be the vehicle for Saudi Arabia Project 2.

6

37.     In or about October 2015, TAYEH provided Victim 1 a fake Orabank check in the amount of $20 million made payable to TAYEH.

38.     On or about October 30, 2015, TAYEH agreed to purchase a stake in Victim 1's business on lucrative terms in return for Victim 1 providing immediate financing for Saudi Arabia Project 2.

39.     On December 30, 2015, TAYEH agreed to purchase Victim 1's business in its entirety and promised Victim 1, among other things, 20 percent of the profits from Saudi Arabia Project 2.

40.     On or about April 7, 2016, TAYEH falsely represented that Barclays Bank would issue a letter of credit in an attempt to assure Victim 1 that TAYEH had the funds to purchase Victim 1's company.

41.     In or about July 2016, TAYEH was introduced to Victim 2 and TAYEH asked Victim 2 to become involved in Saudi Arabia Project 2.

42.     On or about July 20, 2016, TAYEH entered into an agreement with Victim 2 and Victim 3 to establish the company B.A.T. My Environment, LLC to participate in Saudi Arabia Project 2.

43.     On or about August 3, 2016, TAYEH sent a text message to Victim 2 falsely stating that two reputable educational institutions were participating in Saudi Arabia Project 2.

44.     On or about November 14, 2016, TAYEH sent a text message to Victim 2 stating that he had obtained funding for Saudi Arabia project 2 and asked Victim 2 for more money.

45.     On or about January 23, 2017, TAYEH sent a text message to Victim 2 and Victim 3 stating in part, "EXPECT MY FINAL UPDATE ON PAYMENT AND MEETING BY THURSDAY."

## COUNTS ONE AND TWO
Bank Fraud; Aiding and Abetting
(18 U.S.C. §§ 1344 and 2)

The Grand Jury charges:

46.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-23 of this Superseding Indictment.

47.     From in or about December 2013 to present, in the District of Massachusetts and elsewhere, the defendant,

### HANIBAL TAYEH,

knowingly executed and attempted to execute a scheme and artifice to defraud Bank RI and to obtain moneys and funds owned by and under the custody and control of Bank RI, by means of materially false and fraudulent pretenses and representations as follows:

| Count | Approximate Date | Description of Execution |
|-------|------------------|--------------------------|
| 1 | January 15, 2014 | Obtained loan package for Spectrum and Hanibal Technology |
| 2 | March 31, 2014 | Obtained $400,000 increase in line of credit for Spectrum and Hanibal Technology |

All in violation of Title 18, United StateS Code, Sections 1344 and 2.

9

COUNTS THREE THROUGH TWELVE
Wire Fraud
(18 U.S.C. § 1343)

The Grand Jury further charges:

48.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-45 of this

Superseding Indictment.

49.     From in or about April 2013 to present, in the District of Massachusetts, and

elsewhere, the defendant,

HANIBAL TAYEH,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money

and property by means of materially false and fraudulent pretenses, representations, and promises,

did transmit and cause to be transmitted by means of wire communications in interstate and foreign

commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme

to defraud, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 3 | February 4, 2014 | Email from TAYEH to Victim 1 about expected $8.9 million in funding for Saudi Arabia Project 1 |
| 4 | September 24, 2014 | Email from TAYEH to Victim 1 seeking money for Saudi Arabia Project 1 |
| 5 | September 24, 2014 | Email from TAYEH to Victim 1 stating that he had just had a meeting at a prominent New York City law firm with the Saudi Arabian business and representatives from Chase Bank and Bank of America |
| 6 | September 25, 2014 | Email from TAYEH to Victim 1 seeking money for Saudi Arabia Project 1 and attaching a fake Bank of America check |
| 7 | January 28, 2016 | Email from TAYEH to Victim 1 falsely representing that he had made large deposits into a corporate bank account |
| 8 | April 7, 2016 | Email from TAYEH to Victim 1 falsely stating that Barclays Bank would issue a letter of credit |
| 9 | July 16, 2016 | Email from TAYEH to Victim 2 indicating Victim 2's role in Saudi Arabia Project 2 |
| 10 | July 19, 2016 | Email from TAYEH to Victim 2 attaching a promissory note |

10

| 11 | September 20, 2016 | Text message from TAYEH to Victim 2 falsely stating role of Victim 1 in Saudi Arabia Project 2 |
| 12 | November 14, 2016 | Text message from TAYEH to Victim 2 asking for $5,000 and stating, "I have in my hand $600,000 SAR" |

All in violation of Title 18, United State Code, Section 1343.

COUNTS THIRTEEN THROUGH SIXTEEN
Money Laundering; Aiding and Abetting
(18 U.S.C. §§ 1957 and 2)

The Grand Jury further charges:

50.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-49 of this

Superseding Indictment.

51.     On or about each of the dates set forth below, in the District of Massachusetts

and elsewhere, the defendant,

HANIBAL TAYEH,

did knowingly engage in and attempt to engage in a monetary transaction in criminally derived

property of a value greater than $10,000, such property having been derived from a specified

unlawful activity, namely, as follows:

| Count | Approximate Date | Specified Unlawful Activity | Description |
|-------|------------------|-----------------------------|-------------|
| 13 | March 31, 2014 | Bank Fraud, 18 U.S.C. § 1344 | Check for $80,000 drawn from Bank of America account in the name of Hanibal Technology LLC payable to Individual #1 |
| 14 | March 31, 2014 | Bank Fraud, 18 U.S.C. § 1344 | Check for $100,000 drawn from Bank of America account in the name of Hanibal Technology LLC payable to Individual #2 |
| 15 | March 31, 2014 | Bank Fraud, 18 U.S.C. § 1344 | Check for $100,000 drawn from Bank of America account in the name of Hanibal Technology LLC payable to Individual #3 |
| 16 | November 2, 2015 | Wire Fraud, 18 U.S.C. § 1343 | Purchase of bank check in the amount of $35,000 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

COUNT SEVENTEEN
False Bankruptcy Declaration
(18 U.S.C. § 152(3))

The Grand Jury further charges:

52.     On or about April 30, 2015, in the District of Massachusetts, the defendant,

HANIBAL TAYEH,

did knowingly and fraudulently make a material false declaration, certificate and verification

under the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to

cases under Title 11, In re: Spectrum Analytical, Inc., No. 15-30404-HJB and In re: Hanibal

Technology, LLC, No. 15-30405-HJB, in an affidavit in which the defendant falsely stated that

the principals of Spectrum Analytical, Inc. and Hanibal Technology, LLC had no knowledge of a

fraudulent letter of credit.

All in violation of Title 18, United States Code, Section 152(3).

13

## BANK FRAUD AND WIRE FRAUD FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(2)(A))

The Grand Jury further finds that:

1.      Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1343 and 1344, set forth in Counts One through Twelve of this Superseding Indictment, the defendant,

### HANIBAL TAYEH,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offense.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

MONEY LAUNDERING FORFEITURE ALLEGATIONS
(18 U.S.C. § 982(a)(1))

The Grand Jury further finds that:

1.      Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts Thirteen through Sixteen of this Superseding Indictment, the defendant,

HANIBAL TAYEH,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property.  The property to be forfeited includes, but is not limited to, the following:

      a.   $315,000, to be entered in the form of a forfeiture money judgment.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
ALEX J. GRANT
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS


District of Massachusetts: DECEMBER 13, 2018 et 11:41 a.m.
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

17